United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRIBUTORS ASSOCIATION WAREHOUSEMEN'S PENSION TRUST AND, et al., | No.  C-05-1161 SBA (WDB) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| FOREIGN TRADE ZONE 3, INC., | |
| Defendant. | |
| _____/ | |

Plaintiffs are the administrators of multi-employer employee benefit plans. Complaint for Violation of ERISA, filed March 21, 2005, ("Complaint") at ¶4. Defendant, Foreign Trade Zone 3, Inc., (hereafter "FTZ") is bound by a collective bargaining agreement and various trust agreements to make timely contributions to plaintiff trust funds for work performed by FTZ's employees.  Complaint at ¶6; Declaration of David McKenzie, filed August 18, 2005, ("McKenzie Decl.") at ¶¶3-5.

On March 21, 2005, plaintiffs filed a complaint against FTZ primarily seeking to collect unpaid contributions and other amounts due the multi-employer benefit plans pursuant to the governing collective bargaining agreement.  See, Complaint.

1

1    On March 30, 2005, plaintiffs served defendant with a copy of the

2    Complaint.  See Proof of Service of Summons, filed April 15, 2005.[1]  Although

3    documents in the record indicate that defendant <u>served</u> plaintiffs with something

4    apparently styled an answer, defendant has not <u>filed</u> a response to the Complaint.

5    *See*, Plaintiffs' Motion to Strike Answer to Complaint, filed April 29, 2005.  In

6    response to plaintiffs' application for entry of default, the Clerk of the Court

7    entered default as to FTZ on July 1, 2005.

8    On August 18, 2005, plaintiffs filed and served their Motion for Default

9    Judgment ("Motion").  See, Application for Default Judgment, filed August 18,

10   2005.  On October 6, 2005, plaintiffs served defendant with additional materials

11   filed in support of their Motion.  See, Proof of Service, filed October 7, 2005.  On

12   October 18, 2005, plaintiffs served defendant with this court's order scheduling a

13   hearing in connection with plaintiffs' Motion for November 7, 2005.

14   On November 7, 2005, this court conducted a hearing in connection with

15   plaintiffs' Motion.  No appearance was made on defendant's behalf.  In their

16   Motion, plaintiffs seek a monetary judgment for unpaid delinquent contributions,

17   liquidated damages, interest, attorneys' fees, and costs, as well as an order

18   compelling defendant to comply with the collective bargaining agreement, to

19   submit to an audit, to post a bond to secure future contributions, and for other

20   miscellaneous relief.  Memorandum of Points and Authorities, filed August 18,

21   2005.  In order to address questions raised by the court at the hearing, plaintiffs

22

23      [1]On March 30th, plaintiffs personally served defendant by delivering a copy of the
documents to the representative apparently in charge at defendant's location.  Plaintiffs also
24   served defendant via U.S. Mail on March 31st.  Proof of Service of Summons.

        Plaintiffs have served all filings related to this case on defendant at the following address:
25   Joseph Gerace, Foreign Trade Zone 3, Inc., Pier 23, San Francisco, CA 94111.  The court was
concerned that "Pier 23" was too general of an address given that multiple businesses are located
26   at Pier 23.  Plaintiffs' counsel represented on the record that this is the proper address for FTZ
and that they are confident FTZ has received the filings because Mr. Gerace telephoned counsel
27   to discuss some of the documents after receiving them.  See, Transcript 11-7-05 hearing.
Accordingly, we are satisfied that the mailing address is sufficient to provide FTZ the notice to
28   which it is entitled.

filed and served Supplemental Information re: Motion for Default Judgment, on November 18, 2005 ("Supp. Info.").

## I.   **Entry of Default Judgment**

Plaintiffs seek entry of judgment by default against FTZ.

The Clerk of the Court entered default as to defendant, and plaintiffs served FTZ with their Motion for Default Judgment.  See, Application for Default Judgment.  Although FTZ apparently served plaintiffs with a response to the complaint, FTZ has failed to <u>file</u> any type of response with this Court or to appear before the Court despite having been served with notice of these proceedings.  Given defendant's failure to appear before this court, the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an employer fails to make the required contributions, the sufficiency of plaintiffs' Complaint, and the apparent merit of plaintiffs' substantive claim, we RECOMMEND that Judge Armstrong find that plaintiffs are entitled to judgment by default against Foreign Trade Zone 3, Incorporated.  See, F.R.C.P. 55(b); *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).  We address the relief plaintiffs request below.

## II.   **Items of Relief Sought by Plaintiffs**

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions

in which a judgment in favor of the plan is awarded the court *shall* award the plan --
(A)   the unpaid contributions,
(B)   interest on the unpaid contributions,
(C)   an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
(D)   reasonable attorneys' fees and costs of the action . . ., and
(E)   such other legal or equitable relief as the court deems appropriate.

3

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ..

29 U.S.C. §1132(g)(2) emphasis added.

    **A.**    **Unpaid contributions**

Plaintiffs seek unpaid contributions in the amount $15,416.95 owing pursuant to the governing collective bargaining and trust agreements (collectively "CBA"). McKenzie Decl., at Ex. A; Supp. Info., at Ex. A. Defendant owes contributions to two different trusts, the Pension Trust and the Medical Trust. Because the same rules appear to govern each trust, we do not differentiate between them here and address plaintiffs' aggregate request. We RECOMMEND that Judge Armstrong order plaintiffs to properly allocate to the respective trusts any sums recovered.

On October 8, 2003, an organization called Industrial Employers and Distributors Association (IEDA) became signatory to a collective bargaining agreement "for and on behalf of [its] present members." At that time, FTZ was a member of IEDA. McKenzie decl., at Ex. A, p.1 and A-1. That collective bargaining agreement bound IEDA's members, including FTZ, to pay specified amounts into a Pension Trust and a Medical Trust on behalf of the members' employees. See McKenzie Decl., at Ex. A, Art. IX. This agreement is in effect from June 1, 2003, to May 31, 2007. *Id.*, at §9.03.[2] Accordingly, defendant is obligated to pay contributions for covered work conducted by its employees for the period October 8, 2003, through May 31, 2007. McKenzie Decl., at Ex. A.

The evidence also supports a finding that FTZ's contributions were <u>due</u> on the last day of the month following the month in which the work was performed.

---

[2]At some point in 2005, defendant lost its membership with IEDA for failure to pay its dues. McKenzie Decl., at ¶6. FTZ, nonetheless, remains bound by the collective bargaining and trust agreements. See Supp. Info., at Ex. B ("Subscriber's Agreements" in which FTZ agrees to be bound by the collective bargaining, Pension, and medical benefit agreements).

McKenzie Decl., at ¶11.[3]  Contributions did not, however, become "delinquent"

until thirty days after the due date.  "If on the thirtieth day after any payment is

due, such amount is unpaid, the Subscribing Employer is deemed to be

delinquent."  McKenzie Decl., at Ex. A (collective bargaining agreement at

§9.05); Supp. Info., at 2.[4]

     Plaintiffs seek unpaid contributions delinquent as of November 18, 2005, in

the amount $15,416.95.[5]  See, McKenzie Decl., at Ex. B; Supp. Info., at Ex. A,

note (1).  Because such damages are supported by the evidence, we

RECOMMEND that the District Court enter judgment against FTZ in the amount

$15,416.95 for unpaid contributions.[6]

---

[3]We note for the record that we could not find a provision in the collective bargaining agreement establishing the due date.  However, plaintiffs have submitted evidence that the parties interpreted the agreement such that contributions were due on the last day of the month following the month in which the work was performed.  McKenzie Decl., at ¶ 11; Supp. Info., at 2.

[4]We note for the record that these terms are different from those alleged in the Complaint. The Complaint alleges that contributions for work conducted in the prior month are due on the "13th day of each month" and that if not paid on the "13th day of the month are considered delinquent."  Complaint at ¶12 emphasis added.  While generally a defaulting defendant only admits allegations well pleaded in the complaint, the defendant does not admit allegations about damages -- those plaintiffs must prove.  Moreover, the defendant owes less money under the contract terms supported by the evidence than it would under the terms alleged in the Complaint. Therefore, we have no reservations about recommending the findings supported by the evidence.

[5]Contributions delinquent as of that date would pertain to work performed before or during August of 2005.  Those contributions were due September 30, 2005, and became delinquent October 30, 2005.

[6]Plaintiffs evidence in support of the amounts owing lists four categories of damages: (1) "total delinquency contributions," (2) "total delinquency charges," (3) "total interest charges," and (4) "total Clyburn contributions/charges."  Supp. Info., at Ex. A.
    As we understand it, category (1) includes delinquent contributions, category (2) includes liquidated damages, and category (3) includes accrued interest.  Category (4) appears to include both delinquent contributions and liquidated damages pertaining to one employee, Mr. Clyburn. Because plaintiffs lumped delinquent contributions and liquidated damages pertaining to Mr. Clyburn together, we are not sure how much of category (4) pertains to unpaid contributions and how much pertains to liquidated damages.  We've included the entire amount in plaintiffs' category (4) in our recommended award for unpaid contributions and have not included any portion of that amount in the recommended liquidated damages award.  Our break down by type of damages is, therefore, not entirely accurate.  Because we recommend awarding the full amount of unpaid contributions and liquidated damages sought, if Judge Armstrong adopts our

**B.   Interest**

If the Court enters judgment in plaintiffs' favor for unpaid contributions, ERISA requires the Court to award plaintiffs "interest on the unpaid contributions." 29 U.S.C. §1132(g)(2)(B). "[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. §1132(g)(2).

Plaintiffs seek interest on the delinquent contributions at the rate of 12%. McKenzie Decl., at ¶11. Plaintiffs' evidence supports a finding that 12% is the applicable interest rate under the Trust Agreements. McKenzie Decl., at Ex. A (§9.07).

Under the terms of the collective bargaining agreement the Trusts begin charging interest only where (1) the contribution is delinquent by 120 days or more or (2) the Trusts have filed a lawsuit to recover the delinquent contributions. McKenzie Decl., at Ex. A, §§9.05, 9.06, 9.07; Supp. Info., at 3. Plaintiffs counsel represented on the record that, with respect to contributions delinquent less than 120 days but which are sought in the lawsuit, interest begins accruing from the date on which plaintiffs filed the lawsuit, March 21, 2005. See, Transcript November 7, 2005, hearing; Supp. Info., at 3.

We RECOMMEND that the District Judge grant plaintiffs' request for judgment for interest on unpaid contributions at the rate of 12%, from the earlier of (1) the date on which a contribution has been delinquent for 120 days or (2) March 21, 2005, as set forth in Exhibit A of plaintiffs' Supplemental Information, through the date paid or, if still unpaid, through the date of judgment. In Exhibit A of plaintiffs' Supplemental Information, plaintiffs calculate interest through November 18, 2005, and seek interest totaling $1,835.30. In the event Judge

---

recommendation, there will be no mathematical error in the total monetary judgment. However, if Judge Armstrong does not adopt our recommendation with respect to unpaid contributions and liquidated damages in full, we RECOMMEND that she require plaintiffs to further isolate the components of the Clyburn damages to enable the Court to ensure that plaintiffs' judgment is accurate.

Armstrong adopts our recommendation, we also RECOMMEND that the Court permit plaintiffs to file an additional submission calculating interest through the date of judgment.

### C.   Liquidated Damages

Plaintiffs seek an item of relief that is referred to variously as "administrative charges," "penalties" and/or "liquidated damages."  McKenzie Decl., at ¶12, Ex. A (§9.05), and Ex. B.  In our view, whatever plaintiffs call these charges, the charges all amount to "liquidated damages" as that term is understood in this context.

Under the CBA the rate for these charges varies depending on the number of days the contribution is past due and/or whether or not plaintiffs' collection counsel has filed a lawsuit to recover the delinquencies.  McKenzie Decl., at Ex. A.  The rate is either 5%, 10%, 15% or 20% depending on those factors.  *Id*.

For the purposes of determining whether plaintiffs are entitled to liquidated damages, and if so, the amount, we group FTZ's delinquent contributions into three categories: (1) contributions that were late but that defendant paid before plaintiffs filed the complaint, (2) contributions that were both late and unpaid at the time the complaint was filed, and (3) contributions that came due after the complaint was filed, became delinquent, and either were paid late or remain unpaid.

As explained below, contributions in categories (2) and (3) are subject to statutory liquidated damages under ERISA.  Contributions in category (1), however, are not subject to mandatory liquidated damages under ERISA.  An award of liquidated damages on contributions within category (1) is a matter of contract.

//

//

7

1

### 1.   Statutory liquidated damages – categories (2) and (3)

ERISA requires the court to award plaintiffs "an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [to constitute unpaid contributions]."  29 U.S.C. §1132(g)(2)(C)(ii).

Statutory liquidated damages are "mandatory and not discretionary" if "the following three requirements [are] satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Northwest Administrators, Inc., v. Albertson's Inc.,* 104 F.3d 253 (9th Cir. 1996).

Plaintiffs have submitted evidence that supports a finding that there were contributions that were delinquent and unpaid at the time plaintiffs filed their lawsuit,[7] and that the CBA provides for an award of liquidated damages on such sums.  McKenzie Decl., at Ex. A and B.  Therefore, plaintiffs have satisfied the first and third *Northwest* requirements.  If Judge Armstrong enters judgment against FTZ for unpaid contributions, plaintiffs will have satisfied the second *Northwest* requirement.  We recommend that, if Judge Armstrong enters judgment against defendant for unpaid contributions, she also enter judgment for liquidated damages in connection with the contributions that were delinquent and unpaid at the time plaintiffs filed their lawsuit.

The Ninth Circuit has not yet ruled with respect to whether plaintiffs can recover statutory liquidated damages in connection with contributions that matured <u>after</u> suit was filed where defendant was delinquent with respect to <u>other</u> contributions at the time suit was filed.  There has been a split among the lower courts of this District on this issue.

---

[7]Plaintiffs are entitled to liquidated damages on these amounts even if defendant paid those contributions after the lawsuit was filed.  *Accord, Northwest*, 104 F.3d at 258.

1    In *Board of Trustees v. Udovch*, 771 F.Supp. 1044 (N.D.Cal 1991), the

2    undersigned held that the Ninth Circuit's opinion in *Parkhurst v. Armstrong Steel*

3    *Erectors, Inc.*, 901 F.2d 796 (9th Cir. 1990), required the court to deny recovery of

4    statutory liquidated damages on contributions that had not matured at the time suit

5    was filed.  We have since been persuaded by the reasoning set forth in *Board of*

6    *Trustees v. Bridon*, 1995 WL 573701 (N.D. Cal 1995), that it is impractical and

7    counterproductive to apply rigidly *Parkhurst*'s broad statements to the

8    circumstances before us, circumstances not considered by the Ninth Circuit in

9    *Parkhurst.*  Therefore, we RECOMMEND that Judge Armstrong follow cases

10   such as *Bridon* and *Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811

11   F.Supp. 1398 (N.D.Cal. 1992), which adopt the more practical approach and

12   award liquidated damages on contributions that came due and became delinquent

13   after plaintiffs filed their Complaint.

14   Pursuant to ERISA, statutory liquidated damages should be awarded at the

15   greater of the interest rate or the liquidated damages rate specified by the plan.

16   The CBA assesses <u>interest</u> at the rate of 12% and <u>liquidated damages</u> at 20% --

17   where, as here, counsel files a lawsuit.  Pursuant to ERISA, liquidated damages,

18   therefore, should be assessed at the higher rate of 20% on contributions in

19   categories (2) and (3).

20

21   **2.    <u>Liquidated damages as a matter of  contract – category (1)</u>**

22   If FTZ paid contributions that were delinquent <u>before</u> plaintiffs filed this

23   action, plaintiffs cannot satisfy the first requirement imposed by *Northwest*

24   *Administrators.  Udovch*, 771 F.Supp. 1044; *Idaho Plumbers and Pipefitters*

25   *Health and Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212

26   (9th Cir. 1989).  Accordingly, plaintiffs would not be entitled to a mandatory

27   award of liquidated damages under §1132(g)(2) of ERISA.  *Id*.  Plaintiffs might,

28   however, be entitled to liquidated damages as a matter of <u>contract</u>.  *Idaho*

*Plumbers*, 875 F.2d at 217 (§1132(g)(2) does not preempt the federal common law of liquidated damages when that section does not apply); *Udovch*, 771 F.Supp. at 1047.

A contractual "liquidated damages provision is enforceable in this setting, and not void as a penalty, only if (1) 'the harm caused by a breach [is] very difficult or impossible to estimate' and (2) the fixed amount is 'a reasonable forecast of just compensation for the harm caused.'" *Udovch*, 771 F.Supp. at 1048 *citing Idaho Plumbers*, 875 F.2d at 217.

Plaintiffs satisfy the first prong of the test. "When an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge." *Udovch*, 771 F. Supp. at 1049.

When we address the second prong of the test, whether the fixed amount is "a reasonable forecast of just compensation for the harm caused," we focus on the "parties' intentions." *Udovch*, 771 F. Supp. at 1048. The negotiating parties "must make a good faith attempt to set an amount equivalent to the damages they anticipate." *Idaho Plumbers*, 875 F.2d at 217. For the reasons explained in *Udovch* we focus "on the character of the process that led, at the time the contract language was drafted, to the fixing of the liquidated damages figures or formulas." 771 F.Supp. at 1048. We look for evidence that "the drafters made a good faith effort to determine that there would be a rational relationship between the damages that would be paid under the clause and the harms that would be suffered *in most of the situations that were reasonably foreseeable*." 771 F. Supp. at 1049 (emphasis in original). More specifically, we look for evidence:

(1) that the drafters gave some thought to the kinds of harms that the liquidated damages provision would embrace, (2) that other, more direct provisions were not made for compensation for at least the bulk of the harms intended to be so embraced, and (3) that it was not obvious, at the time of drafting, that the figure or formula selected would result, in a substantial percentage of instances in which it might be triggered, in amounts of money flowing from defendants to

10

plaintiffs that clearly would be larger than necessary to compensate for the kinds of harms the plaintiffs were likely to in fact suffer.

*Udovch*, 771 F.Supp. at 1048.  Plaintiffs may not receive <u>contractual</u> liquidated damages if those damages would constitute nothing more than a "penalty."

Under the collective bargaining agreement in this case, the amount of liquidated damages depends on the number of days the contributions are past due and/or whether collection counsel has filed a lawsuit to recover the delinquency.

Plaintiffs' Supplemental Information supports an inference that liquidated damages provided for in the CBA (at the rate of 5%, 10%, 15%, or 20%) represent a good faith, rational attempt to estimate actual damages and do not represent a mere penalty.  Plaintiffs represent that they chose this escalating percentage scale because, in their experience, the longer contributions are past due the more difficult and costly they are to collect.  Presumably, when contributions initially become past due, Trust employees contact defendant in an effort to collect the contributions.  This effort likely costs the Trust very little -- the time the employee diverts from his or her regular responsibilities and the cost of sending correspondence, and the like.  At some point, however, the Trust refers the matter to a collection agency.  Supp. Info., at 3.  Pursuant to the Trust's contract with the collection agency, plaintiffs agree to pay the agency 30% of the delinquent amount if the delinquency is collected without having to initiate litigation – but 40% of amounts recovered if the agency had to file a lawsuit to collect.  Supp. Info., at Ex. C.  None of the liquidated damage percentages found in the contract fully compensate plaintiffs for this expense.  This evidence supports an inference that plaintiffs made a good faith effort to correlate the amount of liquidated damages with increases in the cost of collection that would occur with the passage of time.  The parties apparently recognized that the harm the Plans would suffer would increase as the costs of collection increased.  The fact that their calibration of liquidated damage rates was imperfectly correlated with increases in collection

11

agency fees does not justify a finding that the provisions for liquidated damages amounted to nothing more than penalties.

We RECOMMEND that Judge Armstrong grant plaintiffs' request for contract-based liquidated damages on contributions that were delinquent but that FTZ *paid before* plaintiffs filed the lawsuit.

### 3.    Total Liquidated Damages

Plaintiffs have submitted evidence that the total statutory and contract-based liquidated damages currently owing is $9,777.50.[8]  Supp. Info., at Ex. A. Therefore, we RECOMMEND that Judge Armstrong grant plaintiffs' request for liquidated damages in the amount of $9,777.50.

### D.    "Additional Relief"

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate."  29 U.S.C. §1132(g)(2)(E).

We address each additional item of relief requested by plaintiffs below.

### 1.    An order compelling defendant to "pay all contributions due and owing as of the date of entry of judgment in this action"

Plaintiffs seek an order compelling FTZ to "pay all contributions due and owing as of the date of entry of judgment in this action."  Motion at 8.  If Judge Armstrong adopts our recommendation to enter monetary judgment in plaintiffs' favor for all contributions that plaintiffs have demonstrated are due and owing, the requested order would be redundant of the judgment.  Therefore, such an order is unnecessary.  We RECOMMEND that Judge Armstrong deny plaintiffs' request for an order to this effect.

---

[8]See, note 6, *supra*.

**2.** **An order compelling defendant to "pay post-judgment interest at the maximum rate prescribed under the CBA or governing law."**

Plaintiffs originally sought an order compelling FTZ to "pay post-judgment interest at the maximum rate prescribed under the CBA or governing law." Motion at 9.  However, plaintiffs set forth no authority or evidence that would support a finding that they are entitled to post-judgment interest or, if so, the rate to which they are entitled.

Following the November 7, 2005, hearing, plaintiffs have opted not to pursue post-judgment interest at this time.  By doing so, plaintiffs do not waive their right to seek post-judgment interest at a later date.

We RECOMMEND that the District Court not address at this time whether plaintiffs are entitled to post-judgment interest.

**3.** **An order compelling defendant to "perform and continue performing its obligations under the CBA"**

Plaintiffs seek an order compelling defendant to "perform and continue performing its obligations under the CBA."  Motion at 9.  Defendant regularly has failed to pay contributions in a timely manner to the detriment of employees covered by the Pension and Medical Trusts.  Therefore, we RECOMMEND that Judge Armstrong enter an order compelling defendant to perform its obligations under the CBA.

**4.** **An order compelling defendant to submit to an audit at defendant's expense**

Plaintiffs request an order compelling defendant to submit to an audit at defendant's expense.  Motion at 9.

1    We routinely grant requests for an audit in collection cases such as this.

2    Usually, however, the governing collective bargaining agreement directly provides

3    for an audit at the Trustees' election.  Plaintiffs have not identified any provision

4    in the agreement that expressly authorizes an audit.  Plaintiffs have, however, cited

5    two provisions that obligate defendant to reimburse plaintiffs for the cost of an

6    audit.  Supp. Info., at 5-6 citing McKenzie Decl., at Ex. A (§§9.05 and 9.06).

7        While we would have preferred that the drafters be more explicit about their

8    intentions, we RECOMMEND that the District Court find that the contract

9    sufficiently evidences the parties' intentions that an audit may be performed and

10   that defendant will reimburse plaintiffs for the cost of that audit.  Additionally, we

11   note that §1132(g)(2)(E) of ERISA permits the Court to award appropriate

12   equitable relief.  Without an audit, plaintiffs would have no way of determining

13   the amount owed by recalcitrant delinquent employers.

14       Plaintiffs have submitted no evidence about the audit procedure.  We

15   RECOMMEND that Judge Armstrong grant plaintiffs' request for an audit and

16   enter judgment for additional unpaid contributions, interest and liquidated

17   damages found owing as a result of the recommended audit on the condition that

18   plaintiffs use a procedure that provides defendant reasonable notice of the

19   auditor's findings and an opportunity to challenge the amount found owing.

20

21       **5.    An order compelling defendant to "pay costs of suit."**

22       Plaintiffs seek an order compelling FTZ to "pay costs of suit."  Motion at 9.

23       A request for equitable relief is an inappropriate vehicle for obtaining costs

24   of suit.  ERISA requires the court to award reasonable "costs" as an element of

25   damages in conjunction with the attorney's fee request when plaintiffs obtain a

26   judgment for delinquent contributions.  29 U.S.C. §1132(g)(2)(D).  Therefore, if

27

28

reasonable, plaintiffs' costs will become part of the monetary judgment, and plaintiffs' request for an order to this effect is unnecessary.[9]  *See*, section E, *infra*.

We RECOMMEND that the District Court deny plaintiffs' request for a separate provision in an order that would compel defendant to "pay costs of suit." No such separate provision is needed.

### 6.   An order compelling defendant to post a bond in the amount of $6,956.28

Plaintiffs ask the court to order defendant to "post a bond pursuant to §9.08 of the Pension Agreement in the amount of $6,956.28 to approximate three months of contributions as security for the prompt payment of Trust Fund contributions." Motion at 9.

Section 9.08 of the CBA authorizes this form of relief within five days after receipt by defendant of written notice requesting the posting of such a bond.  On November 8, 2005, plaintiffs mailed such a request to FTZ, and defendant has not complied with its obligation.  Supp. Info., at 6 and Ex. G.  Accordingly, we RECOMMEND that Judge Armstrong order defendant to post a bond in the amount of $6,956.28 as section 9.08 of the collective bargaining agreement obligates defendant to do.

### E.   Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought.  29 U.S.C. §1132(g)(2)(D); *Northwest Administrators*, 104 F.3d at 258.

---

[9]Such a request is unnecessary in any event.  Awards of costs generally are governed by F.R.C.P. 54(d), Local Rule 54, and 28 U.S.C. §1920, et seq.  To the extent plaintiffs sought reimbursement of costs not awarded in connection with attorneys' fees, but "allowable" under the law, plaintiffs could seek an award of allowable costs by filing a bill of costs as contemplated by Local Rule 54-1.

Plaintiffs originally sought reimbursement of attorneys' fees incurred through October 6, 2005, in the amount $24,546.25, as well as costs in the amount $829.43.  Chavkin Decl., at ¶20; Supplemental Declaration of Laura Chavkin in Support of Application for Default Judgment, filed October 7, 2005, ("Supp. Chavkin Decl.") at ¶5.  In their "Supplemental Information," plaintiffs revised their fee request by adding additional fees and costs incurred after October 6th and by subtracting certain fees and costs as discussed below.  Plaintiffs now seek fees in the amount $26,558.50 and costs in the amount $901.32.  Supp. Info., at 2 and Ex. D.

### 1.    Tasks conducted and number of hours spent on those tasks

Plaintiffs seek fees in connection with the following tasks: determining the amount of the delinquency, drafting and filing the complaint, requesting default, moving to strike an "answer" served on plaintiffs but never filed, and moving the court for a judgment by default.  Chavkin Decl., at ¶16; Supp. Chavkin Decl., at ¶4.

We have reviewed counsel's billing statements and RECOMMEND that the District Court find that, except as noted below, the kinds of tasks conducted by counsel were reasonably undertaken.  We also RECOMMEND that Judge Armstrong find that counsel expended a reasonable number of hours completing those tasks for which compensation is warranted.  Chavkin Decl., at Ex. C; Supp. Chavkin Decl., at Ex. A.

We RECOMMEND that the District Court deny plaintiffs' request for fees in connection with billing entries relating to plaintiffs' motion to strike, filed April 29, 2005, the billing entry for November 7, 2005, described as "prepare proposed order," and that Judge Armstrong eliminate two hours of work in connection with plaintiff's Supplemental submission.  Supp. Info., at Ex. D.

The non-lawyer representative of defendant served on plaintiffs <u>but never</u> <u>filed</u> something referred to by plaintiffs as an "answer."  On April 29, 2005, plaintiffs filed a Motion to Strike the "answer" together with papers supporting that motion.  Plaintiffs also filed a "reply to opposition" even though FTZ had filed no opposition to their motion to strike.  Judge Armstrong denied the motion to strike because no answer was on file.

We RECOMMEND that Judge Armstrong deny plaintiffs' request for reimbursement of fees incurred in connection with this work.  The evidence supports a finding that counsel was aware that FTZ had not <u>filed</u> the answer. Chavkin Decl., at Ex. C. (billing entry for 4/27/05 "review N.D. Cal. Docket for filing of Answer (doesn't appear on docket)").  It is <u>un</u>reasonable for an attorney to file a motion to strike something that is not part of the Court record.

Based on our review of the most recently submitted billing records, counsel has eliminated hours expended on this task from the final fee request.  Supp. Info., at Ex. D.

Additionally, plaintiffs' billing records reflect an entry charging $56.25, dated November 7, 2005, described as "prepare proposed order."  Supp. Info., at Ex. D.  Based on our review of the docket, no proposed order was submitted to the Court around that time.  Therefore, we RECOMMEND that Judge Armstrong deny plaintiffs' request for reimbursement for that task.

Plaintiffs expended almost 3.5 hours drafting the Supplemental Information and a similar amount of time 'researching' the information contained therein.  In our view, at least some of this work would not have been necessary if plaintiffs had correctly presented provisions in the collective bargaining agreement in the first instance.  For this reason, we RECOMMEND that the District Court deny plaintiffs' request for compensation for two hours of the time Ms. Chavkin spent preparing corrected information for the Court ($450.00).

1    We noted at the hearing that counsel's billing statements contain two entries
2    described as "draft answers" or "draft answer."  Plaintiffs have explained that
3    these descriptions were the result of an error by the billing attorney and that the
4    time spent was actually for drafting the complaint.  Supp. Info., at 5.  We,
5    therefore, do not recommend elimination of those hours.

6
7    ## 2.    Hourly rates

8    Six attorneys and one law student performed legal work in connection with
9    this matter.  Chavkin Decl., at ¶9 and Ex. C.  Plaintiffs seek reimbursement at the
10   following hourly rates:  Lee Trucker $425, Robert Schwartz $300 and $250, Marlo
11   Sarmiento $300, Ronald Triche $245,[10] Laura Chavkin $225, Chris Pirrone $225,
12   and Jennifer Chung $125.

13   At the hearing the court notified plaintiffs that, in this court's experience,
14   several of the billing rates sought exceed the prevailing market rate in the Bay
15   Area for lawyers and law clerk/paralegals of counsel's skill and experience doing
16   the kind of work this matter involved.  See, Transcript November 7, 2005, hearing.
17   Specifically, this court has reviewed many cases of this kind and does not recall
18   seeing billing rates above $300.00 for an attorney's work or above $95.00 for
19   paralegal assistance.  Plaintiffs' Supplemental Information does not persuade us
20   that these rates are reasonable.

21   We, therefore, RECOMMEND that the District Court reduce billing rates
22   for Mr. Trucker, Mr. Schwartz, and Mr. Sarmiento.  Plaintiffs' counsel already has
23   agreed to reduce Ms. Chung's rate.

24   Mr. Trucker performed only 1.25 hours of work in connection with this
25   case.  He provided the initial consultation with his client and drafted the initial
26   letters requesting defendant pay the delinquent contributions.  Supp. Info., at 4.

27
28   [10]The Chavkin Declaration does not mention Mr. Triche, but his name appears on the
     billing records.  At the hearing plaintiffs' counsel confirmed that Mr. Triche is an attorney.

We RECOMMEND that the District Court reduce Mr. Trucker's billing rate to $250. If Judge Armstrong adopts our recommendation this will reduce plaintiffs' fee request by $312.50.

Mr. Schwartz primarily billed at $250.00/hour. However, the evidence indicates that 2.8 hours were billed at the rate of $300.00/hour. We RECOMMEND that the District Court reduce the rate charged for these 2.8 hours to $250.00/hour. If Judge Armstrong adopts our recommendation this will reduce plaintiff's fee request by $140.00.

Mr. Sarmiento billed at the rate of $300.00/hour. Plaintiffs represent that most of Mr. Sarmiento's work has been eliminated in connection with the Motion to Strike. Supp. Info., at 4. Plaintiffs continue to seek reimbursement for .6 hours in which Mr. Sarmiento "drafted a proposed order and assisted in the re-noticing and re-serving of hearing matters." *Id*. While Mr. Sarmiento appears to be highly qualified, none of these tasks requires expertise beyond that of a very junior associate. This is additional support for our view that $300.00/hour is excessive. In light of the low level of expertise required to perform the tasks for which reimbursement is sought, we RECOMMEND that the District Court reduce Mr. Sarmiento's rate to $225.00/hour, the same rate charged by Ms. Chavkin. This recommendation will reduce plaintiffs' fee request by $45.00.

Jennifer Chung is a second year law student at the University of San Francisco and performed the same kind of work as would a paralegal. Chavkin Decl., at ¶9. As previously stated, plaintiffs' counsel has agreed to reduce Ms. Chung's billing rate to $95.00/hour. This rate is commensurate with the prevailing market rate in the Bay Area for paralegals of Ms. Chung's skill and experience doing the kind of work this matter has involved. The Supplemental Information submitted by plaintiffs after the hearing indicates that the final fee request reflects Ms. Chung's reduced rate. Supp. Info., at 5 and Ex. D.

For the reasons stated above, in the event that Judge Armstrong adopts this court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that Judge Armstrong award plaintiffs attorneys' fees in the amount $25,648.50.

### 3.   Costs

Plaintiffs also seek costs in the amount $901.32.  Supp. Info., at 2 and Ex. D.

Plaintiffs seek reimbursement for the Court filing fee, messenger fees, photocopying costs, postage expenses, something called "Attorney's Diversified Services for filing documents with Court," "Overnight delivery expense," "telecopy expense" and "computerized legal research expense."

Based on our review of the billing records, plaintiffs have eliminated costs associated with the Motion to Strike.

Civil L.R. 54-3 permits reimbursement of filing fees, service fees[11] and _some_ photocopies.  In addition, photocopies, postage and computerized legal research are generally recoverable as out of pocket expenses.   "Overnight delivery expense" represents the cost of delivering copies per the District Court's standing order.  Supp. Info., at 5.  The items for which reimbursement is sought constitute taxable costs and/or out-of-pocket expenses normally chargeable to the client. Civil L.R. 54-3.  _Accord_, _Harris v. Marhoefer_, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988).

In the event that Judge Armstrong adopts this court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that Judge Armstrong also award plaintiffs costs in the amount $901.32.

---

[11]Plaintiffs represent that the cost described as "Attorney's Diversified" is for service of process.  Supp. Info., at 5.

**III.**   **Conclusion**

For the reasons stated above, we RECOMMEND that Judge Armstrong:

▶   enter judgment for delinquent contributions, interest at the rate of 12% and liquidated damages at the statutory and contractual rates in a total amount of $27,029.75,[12]

▶   enter an order compelling FTZ to submit to an audit and enter judgment for additional amounts owing following an audit procedure in which defendant has notice of the auditor's findings and an opportunity to respond,

▶   enter an order compelling FTZ to perform and continue performing its obligations under the collective bargaining agreement,

▶   enter an order compelling FTZ to post a bond pursuant to §9.08 of the Pension Agreement in the amount of $6,956.28 to approximate three months of contributions as security for the prompt payment of Trust Fund contributions, and

▶   enter judgment for attorneys' fees and costs in the amount of $26,549.82.

**The Court ORDERS plaintiffs to serve a copy of this Report and Recommendation on defendant immediately.**

IT IS SO REPORTED AND RECOMMENDED.

Dated: December 1, 2005

/s/  Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendant,
SBA,  wdb, stats

---

[12]Plaintiff may update this amount to reflect interest accruing after November 18, 2005.